| | |
|---|---|
| IN RE: | CASE NO: 16-13782 |
| CHRISTOPHER J. KAUFMANN<br>LAURIE A. KAUFMANN *fka*<br>LAURIE RUSSELL | IN PROCEEDINGS UNDER CHAPTER 7<br><br>JUDGE: JESSICA E. PRICE SMITH |
| **Debtor** | MOTION OF SELENE FINANCE LP FOR RELIEF FROM STAY AND ABANDONMENT<br><br>(168 Ardmore, Painesville, OH 44077) |

Selene Finance LP, (the "Movant") moves this Court, under Bankruptcy Code §§ 361, 362, 363 and other sections of Title 11 of the United States Code, and under Federal Rules of Bankruptcy Procedure 4001 and 6007, and under Local Bankruptcy Rule 4001-1 for an order conditioning, modifying or dissolving the automatic stay imposed by Bankruptcy Code § 362 and for Abandonment of the Property under Bankruptcy Code 554.

## MEMORANDUM IN SUPPORT

1.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157 (b)(2). The venue of this case and this Motion is proper under 28 U.S.C. §§ 1408 and 1409.

2.      On January 31, 2008, the Debtor Laurie A. Kaufmann fka Laurie Russell, obtained a loan from Taylor, Bean & Whitaker Mortgage Corp. in the amount of $118,146.00. Such loan was evidenced by a Promissory Note dated January 31, 2008 (the "Note"), a copy of which is attached as Exhibit A.

3.      To secure payment of the Note and performance of the other terms contained in it, the Debtor Laurie A. Kaufmann fka Laurie Russell, executed a Security Agreement in favor of

404-OH Northern-V1

Mortgage Electronic Registration Systems, Inc., as nominee for Taylor, Bean & Whitaker Mortgage Corporation dated January 31, 2008 (the "Security Agreement"). The Security Agreement granted a lien on the real property, 168 Ardmore, Painesville, OH 44077 owned by Debtor Laurie A. Kaufmann fka Laurie Russell, (the "Collateral"). The Collateral is more fully described in the Security Agreement (check one):

        ☒    attached as Exhibit B;

        OR

        ☐    contained in the Note, attached as Exhibit A.

4.       The lien created by the Security Agreement was duly perfected by (check all that apply):

        ☒    Filing of the Security Agreement in the office of the Lake County Recorder on February 4, 2008.

        ☐    Filing of the UCC-1 Financing Statement in the office of _____ _____ on _____.

        ☐    Notation of the lien on the Certificate of Title.

        ☐    Other (state with particularity) _____.

A copy of the recorded Security Agreement, UCC-1 Financing Statement, Certificate of Title or other document, as applicable, is attached as Exhibit B. Based on client referral, the lien is the lien on the Collateral.

5.       The entity in possession of the original Note as of the date of this motion is Selene Finance LP, 9990 Richmond Avenue, Suite 400S, Houston, Texas 77042.

6.       The entity servicing the loan is: Selene Finance LP.

7.       The note was transferred, as evidenced by the following:

a.    If the Collateral is real estate:

    i.    Under Uniform Commercial Code § 3-203(a) as applicable under state law in effect where the property is located, from the original lender (check only one):

☐    N/A.

OR

☐    By endorsement on the Note,
payable to _____.

OR

☒    By blank endorsement on the Note

OR

☐    By allonge attached to the Note,
payable to _____.

OR

☐    By blank allonge, attached to the Note.

OR

☐    The Note is not endorsed to the Movant, or is not endorsed in blank with an allegation that the Movant is in possession of the original Note.  The factual and legal basis upon which the Movant is entitled to bring this motion is (explain with particularity and attach supporting documentation):

_____

OR

☐    By endorsement on the Note or by allonge attached to the Note, through a power of attorney.  If this box is checked, a copy of the power of attorney is attached as Exhibit. Explain why it provides Movant the authority to endorse the Note:

_____

      ii.        Under Uniform Commercial Code § 3-203(a) as applicable under state law in effect where the property is located, from Mortgage Electronic Registration Systems, Inc., as nominee for Taylor, Bean & Whitaker Mortgage Corporation to.

      iii.       A court has already determined that Movant has the ability to enforce the Note with a judgment dated _____ in the _____.  A copy of the judgment is attached at Exhibit _____

      iv.       Other _____ [explain].

   b.     If the Collateral is not real estate (check one):

      ☒     N/A

          OR

      ☐     From the original lender to _____ by _____ _____

8.     The Security Agreement was transferred as follows (check one):

      ☐     N/A

          OR

      ☒     From the original lender, mortgagee, or mortgagee's nominee on June 28, 2010 to BAC Home Loans Servicing LP fka Countrywide Home Loans Servicing LP.  Then on  January 4, 2016 to Selene Finance LP.  The transfers are evidenced by the document(s) attached to this Motion as Exhibits C & D.

9.     The value of the Collateral is $95,560.00.  This valuation is based on the fair market value as determined by the Lake County Auditor.

10.     As of the date of this Motion, there is currently due and owing on the Note the outstanding principal balance of $150,092.00, plus interest accruing thereon at a rate of 3.750% per annum [$15,42 per day] from June 1, 2015, as described in more detail on the worksheet. The total provided in this paragraph cannot be relied upon as a payoff quotation.

404-OH Northern-V1

11.     The amount due and owing on the Note as set forth in paragraph 10 does not include a credit for the sum held in suspense account by the Movant.  The amount of the credit is $0.00.

12.     Other parties known to have an interest in the Collateral besides the Debtors, the Movant, and the trustee are (check all that apply):

☐     N/A

☒     The Lake County Treasurer, for real estate taxes.

☐     Co-owners, _____

13.     The Movant is entitled to relief from the automatic stay under Bankruptcy Code § 362(d) for these reason(s) (check all that apply):

☐     Debtors have failed to provide adequate protection for the lien held by the Movant for these reasons: _____.

☐     Debtors have failed to keep the Collateral insured as required by the Security Agreement.

☐     Debtors have failed to keep current the real estate taxes owed on the Collateral.

☒     Debtors have failed to make periodic payments to Movant for the months of July 1, 2015 – August 1, 2016, which unpaid payments are in the aggregate amount of $15,569.34 through August 1, 2016.  The total provided in this paragraph cannot be relied upon as a reinstatement quotation.

☒     Debtors have no equity in the Collateral, because the Collateral is valued at $95,560.00, and including the Movant's lien, there are liens in an aggregate amount of greater than $95,560.00 on the Collateral.

☐     Debtors' Notice of Intent indicates surrender of the Collateral.

☐     Other cause (set forth with specificity): _____

14.     Movant has completed the worksheet attached as Exhibit F.

404-OH Northern-V1

15. Movant is entitled to an order directing the trustee to abandon the Collateral under 11 U.S.C. §554(b) for these reasons (check all that apply):

☐     The Collateral is burdensome to the estate because

_____

☒     The Collateral is of inconsequential value and benefit to the estate because upon liquidation of the Collateral no proceeds will remain for the benefit of the estate.

WHEREFORE, Movant prays for an Order from the Court

(a)     granting Movant relief from the automatic stay of Bankruptcy Code § 362 to permit Movant to proceed under applicable nonbankruptcy law; AND

(b)     AUTHORIZING AND DIRECTING THE CHAPTER 7 TRUSTEE TO ABANDON THE COLLATERAL UNDER BANKRUPTCY CODE 554.

Respectfully Submitted,

/s/ Chris E. Manolis
Shapiro, Van Ess, Phillips & Barragate, LLP
Chris E. Manolis(0076197)
4805 Montgomery Road, Suite 320
Norwood, OH 45212
Phone: (513) 396-8100
Fax: (847) 627-8805
cmanolis@logs.com

**"Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase order, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements in support of right to seek a lift of the automatic stay and foreclose if necessary."**

404-OH Northern-V1

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a copy of the foregoing was served, on this 10th day of August, 2016, to the following:

Via the Court's Electronic Case Filing System on these entities and individuals who are listed on the Court's Electronic Mail Notice List:

David O Simon, on behalf of the Chapter 13 Trustee's office at david@simonlpa.com, dosimon@ecf.epiqsystems.com

Keith L. Boarders, on behalf of the Debtors at kblaw123@gmail.com, kblaw123@ecf.courtdrive.com

United States Trustee at (Registered address)@usdoj.gov

And by regular U.S. mail, postage prepaid, on:

Christopher J. Kaufmann, 3223 Napa Boulevard, Avon, OH 44011

Laurie A. Kaufmann a/k/a Laurie Russell, 3223 Napa Boulevard, Avon, OH 44011

Lorraine Fende, 105 Main Street, Painesville, OH 44077


/s/ Chris E. Manolis
Shapiro, Van Ess, Phillips & Barragate, LLP
Chris E. Manolis (#0076197)
4805 Montgomery Road, Suite 320
Norwood, OH 45212
Phone: (513) 396-8100
Fax: (847) 627-8805
Email: cmanolis@logs.com

404-OH Northern-V1

**EXHIBIT F**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE:** | **CASE NO: 16-13782** |
| **CHRISTOPHER J. KAUFMANN**<br>**LAURIE A. KAUFMANN** *fka*<br>**LAURIE RUSSELL** | **IN PROCEEDINGS UNDER CHAPTER 7**<br><br>**JUDGE: JESSICA E. PRICE SMITH** |
| **Debtor** | |
| | **SELENE FINANCE LP'S RELIEF FROM STAY AND ABANDONMENT WORKSHEET** |

1. LOAN DATA

    A. IDENTIFICATION OF COLLATERAL (check all that apply):

    ☒ Real Estate 168 Ardmore, Painesville, OH 44077
        ☐ Principal Residence of Debtor
    ☒ Other

    ☐ Personal Property _____
    ☐ Other _____

    B. CURRENT VALUE OF COLLATERAL: <u>$95,560.00</u>

    C. SOURCE OF COLLATERAL VAULATION: <u>Lake County Auditor's Office</u>

    D. ORIGINAL LENDER: <u>Taylor, Bean & Whitaker Mortgage Corporation</u>

    E. ENTITY ENTITLED TO ENFORCE THE NOTE: <u>Selene Finance LP</u>

    F. CURRENT LOAN SERVICER: <u>Selene Finance LP</u>

    G. DATE OF LOAN: <u>January 31, 2008</u>

    H. ORIGINAL PRINCIPAL AMOUNT DUE UNDER NOTE: <u>$118,146.00</u>

    I. ORIGINAL INTEREST RATE ON NOTE: <u>6.00%</u>

    J. CURRENT INTEREST RATE: <u>3.750%</u>

K.  ORIGINAL MONTHLY PAYMENT AMOUNT
    (principal and interest only for mortgage loans): $708.35

L.  CURRENT MONTHLY PAYMENT AMOUNT: $1,126.10

M.  THE CURRENT MONTHLY PAYMENT AMOUNT LISTED ABOVE:

    ☐  Includes an escrow amount of $_____ for real estate taxes.
    ☐  Includes an escrow amount of $_____ for property insurance.
    ☒  Includes an escrow amount of $397.04 for Taxes and Insurance.
    ☐  Includes an escrow amount of $_____ for _____
    ☐  Does not include any escrow amount

N.  DATE LAST PAYMENT RECEIVED: June 16, 2015

O.  AMOUNT OF LAST PAYMENT RECEIVED: $1,028.07

P.  AMOUNT HELD IN SUSPENSE ACCOUNT: $0.00

Q.  NUMBER OF PAYMENTS PAST DUE: 14

2.  AMOUNT ALLEGED TO BE DUE AS OF THE DATE THE MOTION IS FILED

|     | Description of Charge | Total Amount of Charges | Number of Charges Incurred | Date Charges Incurred |
|-----|-----------------------|-------------------------|----------------------------|-----------------------|
| A.  | PRINCIPAL             | 150,092.00              |                            |                       |
| B.  | INTEREST              | $6,491.65               |                            |                       |
| C.  | LATE FEES             | $172.32                 |                            |                       |
| D.  | PRO RATA MIP/PMI      | $84.26                  |                            |                       |
| E.  | ESCROW ADVANCES       | $4,261.17               |                            |                       |
| F.  | CORPORATE ADVANCES    | $1,853.00               |                            |                       |

TOTAL DEBT:                                      $162,954.40

LESS AMOUNT HELD IN SUSPENSE:                         $0.00

TOTAL DUE AS OF DATE MOTION IS FILED: $162,954.40
*This total cannot be relied upon as a payoff quotation.


This Exhibit and Worksheet was prepared by:


Respectfully Submitted,

/s/ Chris E. Manolis
Shapiro, Van Ess, Phillips & Barragate, LLP
Chris E. Manolis(0076197)
4805 Montgomery Road, Suite 320
Norwood, OH 45212
Phone: (513) 396-8100
Fax: (847) 627-8805
cmanolis@logs.com



# COUNTY OF LAKE

## FRANK A. SUPONCIC, CPA, CFE
### RECORDER

| EASTERN | WESTERN | FAX |
| LAKE COUNTY | LAKE COUNTY | (440) 350-5940 |
| (440) 350-2510 | (440) 946-2829 | |





**2008R003119**

LAKE COUNTY OHIO
RECORDED ON
02/04/2008   11:40:23AM

FRANK A SUPONCIC,CPA,CFE
LAKE COUNTY RECORDER
REC FEE:        $76.00
        PAGES:  9

**IMPORTANT
RECORDING INFORMATION**

This cover sheet is a permanent addition to the original document and *MUST* be retained with the document that was filed and/or recorded.

**Reflected hereon is the pertinent recording information:**

- • File Number
- • Date Filed
- • Time Filed
- • Recording Fee
- • Number of Pages Recorded

# Thank You

105 MAIN STREET • P.O. BOX 490 • PAINESVILLE, OHIO 44077
www.lakecountyrecorder.org • E-mail: recorder@lakecountyohio.org

After Recording Return To:
**ENTERPRISE TITLE AGENCY**
**8 N. STATE STREET, STE 378**
**PAINESVILLE              , OH** ████████

───────────────────────────── [Space Above This Line For Recording Data] ─────────────────────────────

# OPEN-END MORTGAGE

| FHA CASE NO. |
| --- |
| ████████████ |

**MIN** ████████████████

     THIS MORTGAGE ("Security Instrument") is given on **January 31, 2008**
The mortgagor is **Laurie Russell,** unmarried

                                        ("Borrower"). This Security Instrument is given to
Mortgage Electronic Registration Systems, Inc. ("MERS"). MERS is a separate corporation that is acting solely as nominee
for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is
organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI
48501-2026, tel. (888) 679-MERS. **Taylor, Bean & Whitaker Mortgage Corp.**

                                     ("Lender") is organized and existing
under the laws of **FL**                                                   , and
has an address of **1417 North Magnolia Ave, Ocala, FL  34475**

Borrower owes Lender the principal sum of **One Hundred Eighteen Thousand One Hundred Forty Six and no/100**
                                              Dollars (U.S. $**118,146.00**        ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on **February 01, 2038**       .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all
renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under
paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and
agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey
to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the
following described property located in **LAKE**                             County, Ohio:

*L R*

**OHIO FHA MORTGAGE**                                                6/96



GreatDocs™
*(Page 1 of 7)*



**See Attached Exhibit A.**

|  |  |  |  |
|---|---|---|---|
| which has the address of | **168 Ardmore Boulevard** | | |
| | [Street] | | |
| **Painesville** | , Ohio | **44077** | ("Property Address"); |
| [City] | | [Zip Code] | |

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.    **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2.    **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

**OHIO FHA MORTGAGE**            *LR*

EXHIBIT A

Order No. ███████

Situated in the City of Painesville, County of Lake and State of Ohio:

And known as being part of Lot No. 1, Tract No. 3, and is further known as being Lot No. 39 of The Freshwater Allotment as recorded in Lake County Records of Plats, Volume F, Page 46 of Plat of which reference is hereby made for a more complete description. The above described premises being a part of land described in Certificate of Title No. 777 recorded in Registration Book 2, Page 273 of Land Title Registers in the Office of the Recorder of Lake County, Ohio, be the same more or less, but subject to all legal highways.

Permanent Parcel No. ████████████████████

LR

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3.  **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4.  **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5.  **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6.  **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**OHIO FHA MORTGAGE**
**MERS** ▮▮▮▮▮▮

LP

GreatDocs™
*(Page 3 of 7)*

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within **eight months** from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **eight months** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure

proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

**OHIO FHA MORTGAGE**
MERS

LP

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**20. Certain Other Advances.** In addition to any other sum secured hereby, this Security Instrument shall also secure the unpaid principal balance of, plus accrued interest on, any amount of money loaned, advanced or paid by Lender to or for the account and benefit of Borrower, after this Security Instrument is delivered to and filed with the Recorder's Office, _____ County, Ohio, for recording. Lender may make such advances in order to pay any real estate taxes and assessments, insurance premiums plus all other costs and expenses incurred in connection with the operation, protection or preservation of the Property, including to cure Borrower's defaults by making any such payments which Borrower should have paid as provided in this Security Instrument, it being intended by this paragraph 20 to acknowledge, affirm and comply with the provision of § 5301.233 of the Revised Code of Ohio.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)].

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Graduated Payment Rider | ☐ Growing Equity Rider |
| ☐ Planned Unit Development Rider | ☐ Adjustable Rate Rider | ☐ Rehabilitation Loan Rider |
| ☐ Non-Owner Occupancy Rider | ☐ Other [Specify] | |

LR

**OHIO FHA MORTGAGE**
MERS ▮▮▮▮▮▮

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 7 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Executed this *31* day of *January, 2008* .

_Laurie Russell_ (Seal)
**Laurie Russell** -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

State of *Ohio*
County of *Lake*

The foregoing instrument was acknowledged before me this *January 31, 2008* (date) by
*Laurie Russell, unmarried*

_____ (name of person(s) acknowledged).

_____
Notary Public

My Commission Expires:

**MARIA A. BOCSKEY**
**Notary Public - State of Ohio**
**Recorded in Lake County**
**My Commission Expires Nov. 23, 2012**

Kimberlik Wilcox
[Name]

This instrument was prepared by:
Taylor, Bean & Whitaker Mortgage Corp.

**OHIO FHA MORTGAGE**

*(Page 7 of 7 pages)*

GreatDocs™
To Order Call, 1-800-968-5775

# NOTE

FHA CASE NO.

██████████

**January 31, 2008**
[Date]

**168 Ardmore Boulevard**
**Painesville, OH  44077**
[Property Address]

1.  **PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **Taylor, Bean & Whitaker Mortgage Corp.**

and its successors and assigns.

2.  **BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of **One Hundred Eighteen Thousand One Hundred Forty Six and no/100**                Dollars (U.S. **$118,146.00**                ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **Six**

percent (        **6.0000%**) per year until the full amount of principal has been paid.

3.  **PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

4.  **MANNER OF PAYMENT**

(A)  **Time**

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **March 01, 2008**        . Any principal and interest remaining on the first day of        **February 2038**        , will be due on that date, which is called the "Maturity Date."

(B)  **Place**

Payment shall be made at **Taylor, Bean & Whitaker Mortgage Corp., 1417 North Magnolia Ave, Ocala, FL 34475**

or at such other place as Lender may designate in writing by notice to Borrower.

(C)  **Amount**

Each monthly payment of principal and interest will be in the amount of U.S. **$708.35**

This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

*LR*

6/96
GreatDocs™
(Page 1 of 3)

██████████

**(D) Allonge to this Note for Payment Adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. (Check applicable box.)

☐ Growing Equity Allonge        ☐ Graduated Payment Allonge

☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

**(A)  Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **Four**                    percent (                    4%) of the overdue amount of each payment.

**(B)  Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C)  Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

**MULTISTATE FHA FIXED RATE NOTE**                    _LR_

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Note.

_Laurie Russell_ _____ (Seal)
**Laurie Russell**                    -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

*[Sign Original Only]*

Without recourse, pay to the order of

By: Taylor, Bean & Whitaker
    Mortgage Corp.

Erla Carter-Shaw, E.V.P.

**MULTISTATE FHA FIXED RATE NOTE**

GreatDocs™
*(Page 3 of 3)*

 **COUNTY OF LAKE**

 2010R013970

**FRANK A. SUPONCIC, CPA, CFE, CFF**
**RECORDER**

| EASTERN | WESTERN | FAX |
|---------|---------|-----|
| LAKE COUNTY | LAKE COUNTY | (440) 350-5540 |
| (440) 350-2510 | (440) 918-2500 | |

LAKE COUNTY OHIO
RECORDED ON
02/26/2010   12:57:09PM

FRANK A SUPONCIC,CPA,CFE
LAKE COUNTY RECORDER
REC FEE:      $56.00
PAGES:   4

**IMPORTANT**
**RECORDING INFORMATION**



This cover sheet is a permanent addition to the original document and *MUST* be retained with the document that was filed and/or recorded.

Reflected hereon is the pertinent recording information:

- File Number
- Date Filed
- Time Filed
- Recording Fee
- Number of Pages Recorded

## Thank You

105 MAIN STREET • P.O. BOX 490 • PAINESVILLE, OHIO 44077
www.lakecountyrecorder.gov • E-mail: recorder@lakecountyohio.gov

Lake County Recorder 2010R013970 Page: 1 of 4

## ASSIGNMENT OF MORTGAGE

**KNOW ALL MEN BY THESE PRESENT,** that (MERS) Mortgage Electronic Registration Systems, Inc., acting solely as nominee for Taylor, Bean and Whitaker Mortgage Corp., P.O. Box 2026, Flint, MI 48501-2026 for the consideration of One and 00/100 Dollars ($1.00) and other good and valuable consideration, receipt of which is hereby acknowledged, does hereby sell, assign, transfer, and set over unto:

>   BAC Home Loans Servicing, LP fka
>   Countrywide Home Loans Servicing, L.P.
>   400 Countrywide Way
>   Simi Valley, CA 93065

Its successors and assigns, a certain mortgage deed, executed and delivered to (MERS) Mortgage Electronic Registration Systems, Inc., acting solely as nominee for Taylor, Bean and Whitaker Mortgage Corp., from Laurie Russell, unmarried, in the amount of $118,145.00 recorded on February 4th, 2008 in Instrument No. 2008R003119 in the office of the Recorder, Lake County, Ohio, together with the Promissory Note secured thereby and referred to therein; and all sums of money due and to become due thereon. Said real estate described as follows:

SEE LEGAL DESCRIPTION EXHIBIT "A" ATTACHED HERETO AND MADE PART OF.

PPN: 15-C-033-B-00-062-0

IN WITNESS WHEREOF, I have hereunto set my hand on this  11  day of Novmber , 20 09 .

013970

SIGNED AND ACKNOWLEDGED IN THE PRESENCE OF:

(MERS) Mortgage Electronic Registration Systems, Inc., acting solely as nominee for Taylor, Bean and Whitaker Mortgage Corp.

BY _R. Rice_

ITS _Rhonda Rice - Vice President_

STATE OF     )
      Texas    )SS.
COUNTY Tarrant    )

Before me, a Notary Public in and for the aforesaid County and State, personally appeared the above named _____Rhonda Rice_____, to me known to be the person who executed the foregoing instrument, who being duly sworn, did say that he/she is the _____ of (MERS) Mortgage Electronic Registration Systems, Inc., acting solely as nominee for Taylor, Bean and Whitaker Mortgage Corp., duly authorized to execute this Assignment of Mortgage, and acknowledged that he/she signed the said Assignment of Mortgage as said _____ on behalf of (MERS) Mortgage Electronic Registration Systems, Inc., acting solely as nominee for Taylor, Bean and Whitaker Mortgage Corp., and that the signing of said instrument is a free act and deed of said Corporation and the free act and deed of the said _____.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal at _. Ft. Worth_, Texas this 11 day of December, 2009.

_Lucia Ojeda_
Notary Public

013970

LUCIA V OJEDA
Notary Public
STATE OF TEXAS
My Comm. Exp. 08-08-13

This instrument prepared by,
and upon recording, return to:
JEFFREY V. LAURITO, L.L.C.
7550 Paragon Road
Dayton, OH 45459

Lake County Recorder 2010R013970 Page: 3 of 4

# SCHEDULE A

## DESCRIPTION OF LAND

SITUATED IN THE CITY OF PAINESVILLE, COUNTY OF LAKE AND STATE OF OHIO:
AND KNOWN AND BEING PART OF LOT NO. 1, TRACT NO. 3, AND IS FURTHER KNOWN AS BEING
LOT NO. 39 OF THE FRESHWATER ALLOTMENT AS RECORDED IN LAKE COUNTY RECORDS OF
PLATS, VOLUME F, PAGE 46 OF PLAT OF WHICH REFERENCE IS HEREBY MADE FOR A MORE
COMPLETE DESCRIPTION. THE ABOVE DESCRIBED PREMISES BEING A PART OF LAND
DESCRIBED IN CERTIFICATE OF TITLE NO. 777 RECORDED IN REGISTRATION BOOK 2, PAGE 273
OF LAND TITLE REGISTERS IN THE OFFICE OF THE RECORDER OF LAKE COUNTY, OHIO, BE THE
SAME MORE OR LESS, BUT SUBJECT TO ALL LEGAL HIGHWAYS.

PARCEL NO. 15-C-033-B-00-062-0

PROPERTY COMMONLY KNOWN AS: 168 ARDMORE PAINESVILLE, OHIO 44077

013970



*2016R000095 2*
**2016R000095**

LAKE COUNTY OHIO
RECORDED ON
01/04/2016    03:16:13PM

ANN M. RADCLIFFE
LAKE COUNTY RECORDER
REC FEE:        $28.00
PAGES: 2

This space for Recorder's use

| | Recording Requested By: **Bank of America, N.A.** Prepared By: **Diana De Avila** **800-444-4302** **1800 Tapo Canyon Road Simi Valley, CA 93063** | When recorded mail to: **Selene Finance LP** **Attn: Donna Brammer** **9990 Richmond Ave Ste. 400 South** **Houston, TX 77042** |
|---|---|---|
| Property Address: **168 Ardmore Boulevard Painesville, OH 44077** OHO-AM ▇ 11/7/2014 | | |

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is **1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063** does hereby grant, sell, assign, transfer and convey unto **SELENE FINANCE LP** whose address is **9990 RICHMOND AVE SUITE 400 SOUTH, HOUSTON, TX 77042** all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR TAYLOR, BEAN & WHITAKER MORTGAGE CORP., ITS SUCCESSORS AND ASSIGNS**

Borrower(s): **LAURIE RUSSELL, UNMARRIED**
Date of Mortgage: **1/31/2008**
Original Loan Amount: **$118,146.00**
Certificate of Title Number: **ABSTRACT LAND**
Recorded in LAKE County, OH on: 2/4/2008, book N/A, page N/A and instrument number 2008R003119

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
__NOV 1 4 2014__

**BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING LP**

By: _Shannon Mayfield_____,
Shannon Mayfield
Assistant Vice President

State of **California**
County of **Ventura**

On __NOV 1 4 2014__ before me, _E. Gallegos Jr._____, Notary Public, personally appeared __Shannon Mayfield_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

_E. Gallegos Jr._____
Notary Public
My Commission Expires: __Exp. 5/23/18__

(Seal)

E. GALLEGOS JR.
COMM.# 2069166
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires May 23, 2018



Situated in the City of Painesville, County of Lake and State of Ohio:

And known as being part of Lot No. 1, Tract No. 3, and is further known as being Lot No. 39 of The Freshwater Allotment as recorded in Lake County Records of Plats, Volume F, Page 46 of Plat of which reference is hereby made for a more complete description. The above described premises being a part of land described in Certificate of Title No. 777 recorded in Registration Book 2, Page 273 of Land Title Registers in the Office of the Recorder of Lake County, Ohio, be the same more or less, but subject to all legal highways.

Parcel No. 

Address: 168 Ardmore Boulevard, Painesville, OH 44077-2610

LAKE COUNTY OHIO
RECORDED ON
05/24/2013  11:11:44AM

ANN M. RADCLIFFE
LAKE COUNTY RECORDER
REC FEE:        $72.00
PAGES:  5

Recording Requested by
Kason Brown
Bank of America, N.A.
WHEN RECORDED MAIL TO:

Orig loan Amt.$ 118,146.00
New loan Amt.$ 157,425.44
New money Amt $ 39,279.44

Bank of America, N.A.
1001 Liberty Avenue, Suite 675
Pittsburgh, PA 15222
1001 Liberty Ave STE 675 Pittsburgh PA 15222
This document was prepared by Bank of America, N.A.

See Exhibit B for assignments of record if applicable

Space Above for Recorder's Use

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement (the "Agreement"), made on March 5, 2013 between
LAURIE RUSSELL (the "Borrower(s)") and Bank of America, N.A., Original
Lender/Beneficiary Lender or Servicer ("Lender"), amends and supplements that certain
(Mortgage/Deed of Trust) (the "Security Instrument") dated the 31st of January, 2008
which covers the real and personal property described in the Security Instrument and
defined therein as the "Property" (See Exhibit A for Legal Description if applicable),
located at 181 ARDMORE, PAINESVILLE, OH 44077

The real property described being set forth as follows:

SAME AS IN SAID SECURITY INSTRUMENT
Prev. Rec. 2/4/2008   Inst. 2008R003119
In consideration of the mutual promises and agreements exchanged, the parties hereto
agree to modify the Security Instrument as follows:

The fifth (and sixth) sentence(s) of the first paragraph of the Security Instrument is(are)
hereby amended to read in its(their) entirety as follows:

Borrower owes Lender the principal sum of one hundred fifty-seven thousand four
hundred twenty-five and 44/100, (U.S. Dollars) ($157,425.44). This debt is evidenced
Borrower's note dated the same date as this Security Instrument, as amended and
restated as of the date herewith ("Note"), which provides for monthly payments, with the
full debt, if not paid earlier, due and payable on March 1, 2043. The Borrower(s) shall
comply with all other covenants, agreements and requirements of the Security
instrument. Nothing in this Agreement shall be understood or construed to be a
satisfaction or release in whole or in part of the Security Instrument. Except as
otherwise specifically provided in this Agreement, the Security Instrument shall remain
unchanged, and the Borrower(s) and Bank of America, N.A shall be bound by, and
comply with all of the terms and provisions thereof, as amended by this Agreement, and

WXGGoldyModAgree                    Page 1 of 4                    WFBELMMOM 7392 07/25/2007

015536

the Security Instrument shall remain in full force and effect and shall continue to be a
first lien on the above-described property. All capitalized terms not defined herein shall
have the same meanings as set forth in the Security Instrument.

SIGNED AND ACCEPTED THIS __19__ DAY OF __March   2013__
BY

_Laurie Russell_
LAURIE RUSSELL

_____     _____

_____     _____

(ALL SIGNATURES MUST BE ACKNOWLEDGED)

State of __Ohio__, County of __Lake__ On this __19th__ day
of __March__ before me the undersigned, a Notary Public in and for said State,
personally appeared LAURIE RUSSELL, known to me, or proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
foregoing instrument and acknowledged
that __me__ executed the same.

Witness my hand and official seal.

_____ Notary Signature

_Natalie Urbin_ Notary Public Printed Name

_September 24, 2013_ Notary Public Commission

NATALIE D. URBIN
Notary Public, State of Ohio
My Commission Expires
September 24, 2013

WDG-GovLNaAgmt                    Page 2 of 4         WDG-MAGM 7382 07/20/2007

0 15536

**DO NOT WRITE BELOW THIS LINE**
••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••
THIS SECTION IS FOR INTERNAL Bank of America, N.A. USE ONLY

Bank of America, N.A., for itself or as successor by merger to BAC Home Loans
Servicing, LP
By: Urban Settlement Services, LLC, its attorney in fact

By: _____     Dated:   March 28, 2013

Name: Andre Bandelier
Title : Assistant Secretary

_____[Space below this line for Acknowledgement]_____

STATE OF __Colorado__
COUNTY OF __Broomfield__

On __3/28/2013__ before me, __Phillip Har_____Notary Public, personally
appeared _____Andre Bandelier_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be
the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signatures (s) on the instrument the person(s), or
entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____   Notary Signature

__Phillip Har_____   Notary Public Printed Name Place Seal Here

__December 27, 2015__   Notary Public Commission Expiration Date

PHILLIP HLR
NOTARY PUBLIC, STATE OF COLORADO
My Comm. Expires December 27, 2015

WDGGovt.hModAgree          Page 4 of 4          WDGLMAGM 7382 07/20/2007

0 1 5 5 3 6

Lake County Recorder 2013R015538 Page: 3 of 5

## ACCEPTANCE OF OFFER FOR MODIFIED MORTGAGE



We(I) are the borrower(s) on the Mortgage identified above. We agree to or acknowledge the following:

We accept all of the terms and conditions stated in this offer. We have failed to pay the Mortgage in accordance with its terms, and are now in default on the Mortgage. We acknowledge that this commitment for Modified Mortgage, even when signed by Bank of America, N.A. and us, will not prevent or prohibit Bank of America, N.A. from continuing collection action. Therefore, in the event we sign this commitment, but fail to fulfill any or all of its terms and conditions, then Bank of America, N.A. may complete any collection action already commenced without further notice to us, including foreclosure. This commitment will not be considered a waiver of or defense to lender's right to commence or continue any collection action. The terms of the Modified Mortgage will be as stated in Section A above. We will sign any documents necessary to complete the Modified Mortgage. We acknowledge that this commitment is contingent as provided in Section B and Section C of Bank of America, N.A.'s offer. Bank of America, N.A. shall determine whether the contingencies have been satisfied. If the new principal amount of the Modified Mortgage is more than the existing principal balance of the Mortgage, then we understand that amounts due such as unpaid interest, taxes, insurance or expenses have been added to the principal amount under the Modified Mortgage. The date for signing the documents and paying the amounts due will be April 4, 2013, or such other date that Bank of America, N.A. may select. All representations made by us pursuant to our request for the Modified Mortgage are true and have been and will be relied upon by Bank of America, N.A., and any breach of the representations will give Bank of America, N.A. the right to terminate this commitment and could result in the pursuit of other right and remedies by Bank of America, N.A.

I/We am/are now occupying the property as my/our primary place of residence. We have had the opportunity to consult with legal and/or tax counsel prior to agreeing to the foregoing, and have willingly agreed to these terms and conditions whether or not we elected to retain such counsel.

As evidenced by the signature below, the Borrower and the Lender agree to the foregoing:

_Laurie Russell Kaufmann_

LAURIE RUSSELL Kaufmann

_3-16-2013_

Date                        Date



Page 3 of 4

Please write your account number on all correspondence.   WDSC164CM 7370 03/16/2007

015536

Lake County Recorder 2013R515535 Page 4 of 5

**EXHIBIT A**

LEGAL DESCRIPTION

Situated in the City of Painesville, County of Lake and State of Ohio:

And known as being part of Lot No. 1, Tract No. 3, and is further known as being Lot No. 39 of The Freshwater Allotment as recorded in Lake County Records of Plats, Volume V, Page 46 of Plat of which reference is hereby made for a more complete description. The above described premises being a part of land described in Certificate of Title No. 777 recorded in Registration Book 2, Page 273 of Land Title Registers in the Office of the Recorder of Lake County, Ohio, be the same more or less, but subject to all legal highways.

015536